UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

SEAN DONNELLY,

        Defendant.
                           /

No. 10-20136

District Judge Victoria A. Roberts

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Before the Court is Defendant's Motion to Dismiss Count One of the Indictment [Docket #19], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be DENIED.

**I.    FACTS**

Defendant is charged in a two-count indictment with transmitting an interstate threat, in violation of 18 U.S.C. § 875(c) (Count One), and making a false statement to FBI agents, in violation of 18 U.S.C. § 1001 (Count Two). Only Count One is at issue in the present motion. That charge arises out of a March 4, 2010 telephone conversation between the Defendant, who is a realtor in Michigan, and a Chase Bank representative in Houston, Texas. This conversation was recorded, and the Court has been provided with a copy of the recording and a transcript. It is apparent that the Defendant, who was trying

to negotiate a short sale for one of his clients, was frustrated with what he perceived as being given the runaround by Chase Bank. At one point, the Defendant made the following statement:

> "Now, either you guys want to play ball or you don't but I'm not going to speak with some idiot from Texas who can't be professional with me...too much, it's so freaking ridiculous is–I'm ready to just–I'm ready to fly an airplane into your building."

Of course, the Defendant's timing couldn't have been worse. Two weeks earlier, on February 18, 2010, one Andrew Joseph Stack flew his single-engine airplane into an IRS building in Austin, Texas, killing himself and two others, and injuring 13 people. The Chase representative, a Ms. Cole, admonished the Defendant, telling him that "if you make comments like that on a recorded call I will go to corporate security and they will send a police officer to your home immediately. So, I am just letting you know. That if comments like that continue...." Later in the conversation, the Defendant, although still irate, denied that he was making threats:

> "MS. COLE: We're going to send another [message regarding the sale] right now and I will have someone give you a call. So, you just need to wait for the call instead of continuing to call making threats.
>
> MR. DONNELLY: –That's all I–no, no, no, I'm not calling making threats.
>
> MS. COLE: We have a recorded call, sir, like I said.
>
> MR. DONNELLY: I don't care what you have–this is pissing me off so bad–I've been two weeks with this–two weeks of making phone calls to you and somebody saying that they are going to get back with me and nobody ever does."

## II.  DISCUSSION

18 U.S.C. § 875(c) states:

"Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."

There are three elements under this statute. The government must show "(1) a transmission in interstate commerce; (2) a communication containing a threat; and (3) the threat must be a threat to injure the person of another." *United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir. 1992). The issue in this case is whether the Defendant's statement that he was "ready to fly an airplane" into the complainant's building satisfies the second element, that is, whether it was a "true threat."

Section 875(c) is a general intent crime, and as such, "the standard used to determine whether or not the communication contained an actual threat is an objective standard, i.e., would a reasonable person consider the statement to be a threat." *DeAndino*, 958 F.2d at 148. In other words, the government does not have to prove that the Defendant intended his communication to be a threat, but only that "an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury." *United States v. Francis*, 164 F.3d 120, 123 (2nd Cir. 1999). *See also United States v. Darby*, 37 F.3d 1059, 1066 (4th Cir. 1994) ("Whether a communication in fact contains a true threat is determined by the interpretation of a reasonable recipient familiar with the context of the communication. The government does not have to prove that the defendant subjectively intended for the recipient to

understand the communication as a threat"). More specifically, the Sixth Circuit in *United States v. Alkhabaz*, 104 F.3d 1492,1495 (6th Cir. 1997), held that:

> "to constitute 'a communication containing a threat' under Section 875(c), a communication must be such that a reasonable person (1) would take the statement as a serious expression of an intention to inflict bodily harm (the mens rea), and (2) would perceive such expression as being communicated to effect some change or achieve some goal through intimidation (the actus reus)."

Faced with a motion to dismiss an indictment under § 875(c), a court must, as a matter of law, distinguish between a "true threat" as described above, and speech that is protected by the First Amendment. *United States v. Baker*, 890 F.Supp. 1375, 1385 (E.D.Mich. 1995)("Whether or not a prosecution under § 875(c) encroaches on constitutionally protected speech is a question appropriately decided by the Court as a threshold matter"). For example, in *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), a case arising under 18 U.S.C. § 871 (threats against the President), the defendant, speaking at a public anti-war rally near the Washington Monument, expressed his unwillingness to serve in Vietnam as follows: "I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706. The Supreme Court, placing this statement in its proper context, "and regarding the expressly conditional nature of the statement and the reaction of the listeners [who responded with laughter]," found that the "kind of political hyperbole indulged in" by the defendant was simply "a kind of very crude offensive method of stating a political opposition to the President," rather than a true threat. *Id.* at 708.

Placing the present Defendant's statement that he "was ready to fly an airplane" into a building in context, it cannot reasonably be construed as political hyperbole or protected speech.[1] Unlike *Watts*, the Defendant made the statement privately and directly to an individual, not publically to a large crowd. *See United States v. Syring*, 522 F.Supp.2d 125, 130 (D.C. Cir. 2007) (among factors to be considered is "whether the threat was communicated directly to its victim"). While a trier of fact might question the sincerity or depth of Ms. Cole's alarm, the tape of the conversation is clear that she expressed concern several times. The statement was made in the context of the Defendant's attempt to obtain a favorable valuation of his client's property, or at least to be able to get through to someone at Chase who could assist him. Therefore, Ms. Cole could have reasonably perceived the statement as "being communicated to effect some change or achieve some goal through intimidation." *Alkhabaz, supra*, 104 F.3d at 1495. And perhaps most significantly, the Defendant made his statement to a woman in Texas only two weeks after a widely publicized incident where an apparently disgruntled

---

[1] Because the nature of the threat is assessed objectively, from the perspective of a reasonable listener, the relevant context is that which existed during the conversation. Therefore, the government's gratuitous observation that Defendant is "a registered child sex offender with two arson convictions," *Government's Response*, p.1, is irrelevant, absent some showing (and there is none) that Ms. Cole was aware of Defendant's criminal record. Likewise, any post-conversation conduct (such as the allegation that Defendant later refused to allow F.B.I. agents and police into his home) is irrelevant to the question of whether his statement to Ms. Cole was a true threat.

taxpayer crashed his airplane into an IRS building in Austin.[2]

Because this Defendant's statements cannot be construed as constitutionally protected speech, this Court must give deference to the grand jury's determination, so long as the indictment is facially valid. "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed.2d 397 (1956). *See also United States v. Maceo,* 873 F.2d 1, 3 (1st Cir.1989) ("A court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is a preliminary phase of the criminal justice process and all constitutional protections will be afforded during trial"). In *United States v. Baker*, *supra*, 890 F.Supp. at 1385, which was the predicate case to the Sixth Circuit's decision in *United States v. Alkhabaz,* Judge Cohn, quoting *United States v. Carrier,* 672 F.2d 300, 306 (2d Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982), observed, "In the context of § 875(c), the Second

---

[2] The two cases that Defendant relies upon are distinguishable on the basis of context. In *Alkhabaz,* the allegedly threatening communications were sent between two co-conspirators, but not transmitted to any third party. Therefore, there could be no violation of § 875(c) because as unsavory as they may have been, the comments were not "conveyed to effect some change or achieve some goal through intimidation." *Id.*, 104 F.3d at 1495. In *United States v. Landham*, 251 F.3d 1072 (6th Cir. 2001), the defendant's statement to his ex-wife that "[y]ou will not have Priscilla [their daughter] by her second birthday," and that "[i]t's over kid. Are you an idiot?", made in the context of a divorce and custody suit, could not be reasonably construed on it's face as a true threat. While the Defendant in the present case may not have intended to make a serious threat (which is not part of the mens rea in any event), the context in which he made the "airplane" remark supports a finding that it was a true threat.

Circuit has recognized that '[m]ost cases are within a broad expanse of varying fact patterns which may not be resolved as a matter of law, but should be left to a jury.'"

This is such a case. Yes, it appears that the Defendant spoke intemperately, out of frustration at being repeatedly shunted about and ignored by a large financial institution with whom he was trying to do business. And one could view a criminal indictment as an overreaction and a waste of resources on the part of the government. Given the totality of circumstances, a rational trier of fact might well acquit. But this indictment is valid on its face, and it is not the role of this Court to second-guess or supercede the grand jury's findings. This case should go forward.

### III. CONCLUSION

For these reasons, I recommend that the Defendant's Motion to Dismiss Count One of the Indictment [Docket #19] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *and Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: August 4, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 4, 2010.

S/G. Wilson<br>
Judicial Assistant